**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rodney Lamar CLEMONS, Defendant–Appellant.**

No. 90–8605.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1991.

Erik S. Goodman, Austin, Tex. (Court-appointed), for defendant-appellant.

Joan E.T. Stearns, LeRoy Morgan Jahn, Philip Police, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before SMITH and DUHÉ, Circuit Judges, and SHAW *, District Judge.

SHAW, District Judge:

## OPINION

### A. Course of Proceedings and Disposition in the Court Below.

Rodney Lamar Clemons and his cousin, George Edward Griggs, were indicted by a federal grand jury in a two-count indictment charging each of them with conspiracy to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 846 (Count One), and possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count Two). Clemons and Griggs pled not guilty and were tried before a jury. Both Clemons and Griggs were convicted of the conspiracy count. The jury failed to reach a verdict as to Clemons on the possession count. Griggs was acquitted of the possession count. The district court sentenced Clemons to eighteen months in the custody of the Bureau of Prisons, five years' supervised release, and imposed a $4,000 fine. Only Clemons has appealed his conviction.

* Chief District Judge of the Western District of Louisiana, sitting by designation.

### B. Statement of Facts.

The only issues raised on appeal relate to jury selection. During the course of the jury selection process the court seated, for voir dire, a panel of prospective jurors which included four black venire persons. The Government peremptorily challenged two of the four black jurors. Upon receiving the prosecutors' challenges, the district judge invited defense counsel to object on the basis of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Counsel for Clemons, a twenty-two year old black defendant, requested that the court require the Government to articulate a race-neutral explanation for the peremptory strikes. The prosecution stated that it struck juror, Ernestine Hill, because she was related to the father of the defendant.[1] Assistant United States Attorney Palmer Kelly stated that the reason for striking juror, John Williams, was because he was approximately the same age as the defendant and Kelly believed that because of the similarity in age, Williams might be more sympathetic toward Clemons. Prosecutor Kelly Loving added that he would not accept Williams because of the manner in which Williams was dressed, coupled with the fact that Williams wore his hair in a ponytail. Loving further stated he would not accept anyone wearing a ponytail.

Attorney for Clemons requested from the court, an opportunity to question prosecutors in order to traverse the non-racial reasons given by the Government in challenging Mr. Williams. The district judge granted Clemons' request. Counsel for Clemons proceeded to question the Government regarding the similarity in age between the defendant and prospective jurors who were not challenged by the Government. The district judge terminated the examination, and made a finding that the race-neutral reasons stated by prosecutors for striking Hill and Williams were sufficient and non-pretextual. The court made a specific finding that Ms. Hill did state

1. Clemons does not appeal the district court's decision to uphold the Government's peremptory challenge of Ernestine Hill.

that she was related to the defendant, and that Mr. Williams was dressed in a manner that would cause a prosecutor to strike anyone.[2] The district judge found Mr. Williams to have been dressed very modishly, and that "he looks like a rock star."

The sidebar conference ended shortly thereafter. The court seated the jury, which included two black jurors.

## C. Legal Analysis.

The Supreme Court in *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719, held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable to consider the case against a black defendant."

In order to make a prima facie showing that the prosecution has exercised its peremptory challenges in a racially discriminatory manner, a defendant must first demonstrate that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire, members of the defendant's race.[3] Finally, the defendant must demonstrate that such facts and other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the juror on account of his/her race. *Id.* at 96, 106 S.Ct. at 1722.

■ Once the defendant has made a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race, the burden then shifts to the prosecutor to articulate a race-neutral explanation for such challenges. *Id.* at 98, 106 S.Ct. at 1723. The explanation given, although it need not rise to the level justifying a challenge for cause, must be a race-neutral explanation related to the particu-

lar case to be tried. *United States v. Romero–Reyna*, 867 F.2d 834 (5th Cir.), aff'd. on remand 889 F.2d 559 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1989).

■ When the prosecutor articulates his race-neutral explanation for his peremptory challenge, the district judge must evaluate the prosecutor's explanation and determine whether the explanations are pretextual. This circuit has never addressed the issue of what procedures should be followed by the district court to evaluate the prosecutor's explanation for his challenges.

The Supreme Court in *Batson*, 476 U.S. at 100, 106 S.Ct. at 1725, declined to "formulate particular procedures to be followed" upon a defendant's objection to the prosecutor's challenges. The Court noted that due to the variety of practices followed by the trial courts in the jury selection process, the Court would not attempt to instruct the trial courts on how to best implement its holding; *Id.* at 100, n. 24, 106 S.Ct. at 1725, n. 24.

The appellant maintains that the brief exchange afforded him at sidebar failed to provide him the opportunity to sufficiently rebut the prosecution's explanation for its challenges. Clemons argues that this court should adopt the procedures outlined by the Ninth Circuit for resolving a *Batson* claim. *United States v. Thompson,* 827 F.2d 1254 (9th Cir.1987), provides that all *Batson* objections are to be resolved in an adversarial setting, unless doing so would reveal the Government's case strategy. The Ninth Circuit further set forth its requirements for an adequate "rebuttal" hearing under *Batson*. *United States v. Alcantar,* 897 F.2d 436 (9th Cir.1990).

■ This court specifically declines to set out a procedure to be followed by the district court in evaluating a *Batson* chal-

---

**2.** The court stated, "Mr. Wilson (sic) by his manner of dress, the way he wears his hair, that I would be shocked for any prosecutor to take an individual like this in any case, be he black, white or brown."

**3.** The United States Supreme Court's recent decisions in *Edmonson v. Leesville Concrete Company, Inc.,* 500 U.S. —, 111 S.Ct. 2077, 114

L.Ed.2d 660 (1991) and *Powers v. Ohio,* 499 U.S. —, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), implicitly have eliminated the requirements that a defendant must be a member of a cognizable racial group, and that there must be racial identity between the objecting defendant and the excluded jurors.

lenge, once the prosecutor has articulated a non-racial explanation for his challenge. The district judge must be given discretion in fashioning a procedure necessary to evaluate the prosecutors' race-neutral explanation, to meet the particular circumstances presented.

■ Without adopting a rule to be applied in a *Batson* challenge, this court finds that even under the most rigid standards of the Ninth Circuit, the district court afforded Clemons an adversarial proceeding consistent with *Thompson* and *Alcantar*. The district court exercised its discretion in limiting the scope and duration of the inquiry. Although Clemons was not afforded a full-blown mini trial, the district court allowed counsel for Clemons a brief exchange with the prosecutors, and certainly allowed counsel for the defendant to place evidence in the record in an attempt to rebut the prosecutors' race-neutral explanation, and provide a record for appeal.

The sidebar conference, although brief, allowed Clemons the opportunity to place in the record the fact that other jurors of the approximate age of the defendant were not struck from the panel of prospective jurors, that four individuals on the jury panel were black and that the prosecutor struck two of the black prospective jurors, that juror John Williams was dressed in a suit, in a tie, and that, in Clemons' counsel's opinion, his hair was combed properly, and that Williams was well dressed for court.

Clemons argues that the rebuttal hearing afforded him was not meaningful. Clemons asserts that with more time, he could have demonstrated that age was not a good faith reason for striking Williams. This court finds that the record, as well as the juror questionnaires, confirms that the prosecutors struck the only other male venireperson under 29 years of age, Rolando Guerro, a Hispanic. However, the prosecutors did not exercise a peremptory strike against a 19–year–old white female, although Clemons used one of his peremptory strikes to dismiss her from the jury.

Based upon the facts as stated in the record regarding the age of the jurors on the panel, it is unlikely that Clemons' counsel could have proven that the Government's reason for dismissing Williams on the basis of his age was pretextual or in bad faith. It is likewise unlikely that Clemons' attorney could have improved his argument that the dress and hairstyle of the juror was a bad faith reason for removal of the juror.

The district court has the discretion to determine the sufficiency of the prosecutors' non-racial explanations, and formulate a procedure to test such assertions. We find that the district court acted within its discretion to terminate the *Batson* examination when it satisfied itself that the defendant's objections to the Government's race-neutral explanation were insufficient to establish pretext. Certainly, the trial court was in the position to evaluate the age, dress and hairstyle of Williams, in the context of the proceedings, against the argument of counsel. We will not disturb the trial court's decision absent an abuse of discretion. We find no such abuse.

■ The defendant further asserts that the district court's finding, that the Government's stated race-neutral explanation for exercising its peremptory challenge against Williams was sufficient, was clearly erroneous and not supported by the record. Clemons maintains that the reasons stated were invalid and "evinced purposeful discriminations" in that they were "vague and amorphous."

As stated previously, the process for examining an objection to peremptory challenges under *Batson* are as follows: (1) a defendant must make a prima facie showing that the prosecutor has exercised his peremptory challenges on the basis of race, (2) the burden then shifts to the prosecutor to articulate a race-neutral reason for excusing the juror in question, and (3) the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Hernandez v. New York*, — U.S. —, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

■ The Supreme Court in *Hernandez* stated that a neutral explanation is an explanation based upon something other than

the race of the juror. Such an inquiry should focus on the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason given by the prosecutor will be deemed race-neutral. *Hernandez, v. New York,* — U.S. —, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

Under *Batson,* a prosecutor's explanation for a peremptory strike need not rise to the level of a challenge for cause; rather, it merely must contain a clear and reasonably specific articulation of legitimate reasons for the challenge. *United States v. Roberts,* 913 F.2d 211, 214 (5th Cir.1990).

The prosecutors articulated non-racial reasons, those being age, hairstyle, and dress, for striking juror Williams, which satisfied the trial court. Age and appearance have been recognized as legitimate reasons for peremptorily striking potential jurors. *United States v. De La Rosa,* 911 F.2d 985 (5th Cir.1990); *United States v. Moreno,* 878 F.2d 817 (5th Cir.) *cert. denied,* — U.S. —, 110 S.Ct. 508, 107 L.Ed.2d 510 (1989); *United States v. Terrazas–Carrasco,* 861 F.2d 93 (5th Cir.1988); *United States v. Hoelscher,* 914 F.2d 1527 (8th Cir.1990); *United States v. Roan Eagle,* 867 F.2d 436 (8th Cir.1989).

This court has stated that the prosecutor's explanation for the exercise of a peremptory challenge need not be quantifiable and may include intuitive assumptions upon confronting a potential juror. *United States v. De La Rosa,* 911 F.2d 985, 991; *United States v. Moreno,* 878 F.2d 817, 821 (5th Cir.1989).

The prosecutors stated that Williams was challenged because he was the approximate age of the defendant, and this fact may make him more sympathetic to the defendant. The record clearly shows that the prosecutors did in fact strike the only other male of similar age to the defendant. Such a fact supports the prosecutors' stated reason regarding age. Although prosecutors did not strike a 19–year–old white female from the jury, this court finds that there are several plausible reasons for not striking this juror, which do not relate to her age.

Additionally, the prosecutors stated that the juror's hairstyle and dress made him objectionable. Clemons contends that Williams was dressed neatly and appropriately for court. The trial court was certainly in a position to evaluate the appearance of the juror and assess the credibility of the prosecutors' explanation. The trial judge was quite specific in his findings regarding the appearance of the juror.

Because the issues presented in a *Batson* challenge turn on evaluations of credibility, we review the district court's finding under a clearly erroneous standard. *United States v. Terrazas–Carrasco,* 861 F.2d 93, 94 (5th Cir.1988). The record clearly demonstrates that the juror's appearance created a sufficient basis for a peremptory challenge. Giving proper deference to the trial court, we conclude that the record supports a sufficient race-neutral explanation under *Batson,* and the district court's findings, being supported by the record, are not clearly erroneous.

The judgment of the district court is AFFIRMED.