**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-11111
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MATHIS PERRY PERKINS, III, and
MICHAEL GEORGE SMITH,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

January 30, 1997

Before JOLLY, JONES and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

A jury convicted appellants, Mathis Perry Perkins, III ("Perkins"), and Michael George Smith ("Smith"), of conspiring to commit interstate theft. The district court sentenced Perkins to 41 months' imprisonment, Smith to 60 months' imprisonment and both defendants to three years' supervised release and a payment of $30,964.30 in restitution. We affirm.

JURY SELECTION

Perkins and Smith argue that the prosecutor failed to articulate a clear and reasonably specific explanation for excluding an African-American venire person from the jury and that the prosecutor's explanation for the strike was not race-neutral.

A prosecutor violates the Equal Protection Clause when potential jurors are challenged solely on the basis of their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *see United States v. Clemons*, 941 F.2d 321, 323 (5th Cir. 1991). The process for examining an objection to peremptory challenges under *Batson* is as follows:

> (1) a defendant must make a prima facie showing that the prosecutor has exercised his peremptory challenges on the basis of race, (2) the burden then shifts to the prosecutor to articulate a race-neutral reason for excusing the juror in question, and (3) the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Clemons*, 941 F.2d at 324. When the record contains an explanation for the Government's peremptory challenges, this court will review "only the propriety of the ultimate finding of discrimination *vel non*." *United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir. 1987). Jury selection is subjective, and a *Batson* determination turns largely on the court's evaluation of the credibility of counsel's explanation. *United States v. Wallace*, 32 F.3d 921, 925 (5th Cir. 1994). The district court's decision on the ultimate question of discriminatory intent is a finding of fact which is

2

accorded great deference. *United States v. Fike*, 82 F.3d 1315, 1319 (5th Cir.), *cert. denied*, 117 S. Ct. 242 (1996). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Purkett v. Elem*, 115 S. Ct. 1769, 1775 (1995) (quotations and internal citation omitted); *United States v. Krout*, 66 F.3d 1420, 1429 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 963 (1996).

At trial, the defense challenged the prosecution's use of a peremptory challenge which excluded an African-American venire person, referred to as Juror 7, pursuant to *Batson*. Following the defense's *Batson* challenge, the court asked the prosecutor to state her reason for striking the juror. The prosecutor responded in pertinent part:

> Number 7, the question was asked about whether the defendant -- whether when individuals walked into the courtroom they knew right away who the defendant was and who the attorneys were and he started shaking his head and kind of had a disgusted look on his face. And from that I got the impression that he might be somebody who would have some ill feeling about the fact that there could have been some sort of a -- a -- something against the defendants because of their race. . . .[1]

Counsel for Perkins responded that the proffered explanation failed to articulate a sufficient reason and that it "indicated that there

---

[1] Counsel for Perkins asked during voir dire, "With respect to the presumption of innocence, when y'all walked in this room here did you look around the courtroom and be able to figure in your mind who the defendants were and who the lawyers were and who the prosecutors were pretty quickly? Did you do that?"

3

was some kind of racial connotation on her analysis." The district court ruled:

> On Number 7, I find that the government did not base its decision on the race of the juror. It based its decision on the juror's apparent concern about the fairness of the prosecution.
>      As I understand it, this is the kind of thing that would have caused the government concern regardless of the race of the juror. It is the juror's reaction to the question. And I find that the government did not base its decision in whole or in part on the juror's race and therefore I overrule the Batson challenge.

No further objection was made by the defense.

Perkins argues that the "some sort of something" referred to by the prosecutor is "fatally vague" and "facially ambiguous". Taken as a whole, Perkins interprets the prosecutor's proffered reason as the prosecutor's subjective opinion that the juror's "outward expression indicated racial sympathy because the venire member and the defendants were both black." Perkins thus argues that the prosecutor believed that the juror would unfairly sympathize with the defendants because they were of the same race. Accordingly, the appellants argue that the prosecution acted on account of the venire member's race.

The Government argues that the prosecutor struck the venire member because she believed that Juror No. 7 displayed concern that the prosecution had something against the defendants because of race. The Government relies on this court's recent decision in *Fike*, 82 F.3d at 1315. In *Fike*, defense counsel asked during voir dire if the venire members would "have a concern" if an all white

4

jury was selected in this case. *Id*. at 1319. An African-American venireman, Williams, answered, "Yes, based on the practice of the U.S. Justice System." *Id*. Although no follow-up questions were asked, the prosecutor struck him. *Id*. Following a <u>Batson</u> motion, the prosecutor explained that Williams had been struck because he "expressed concerns about past practices of the government -- of the U.S. Judicial System" and lacked faith in the judicial system. *Id*. This court stated that "*Batson* does not forbid striking a juror who holds a particular opinion about the U.S. justice system. Rather, it forbids striking jurors based on their race." *Id*. at 1320.

Arguing that the prosecutor relied upon a race-based assumption rather than a race-neutral assumption, appellants attempt to distinguish *Fike* because Juror No. 7, unlike Williams, did not express concern about the judicial system. Appellants argue that the instant case is more analogous to the Ninth Circuit's decision in *United States v. Bishop*, 959 F.2d 820 (9th Cir. 1992), in which the Ninth Circuit held that the prosecutor's articulated reason for striking an African-American venire member was inadequate under *Batson*. The prosecutor explained that he struck the individual because she was poor and lived in a poor, violent area of Los Angeles where residents are anesthetized to violence and probably believe police "pick on" African-American people. *Id*. at 822. The defendant established that the

correlation between residence in that area of town and being African-American was very high and that the prosecutor's reason was a surrogate for racial bias. *Id*. at 823. The Ninth Circuit held that the reason was not race-neutral because it was a generic reason and a group-based presumption that a poor African-American person could not fairly try an African-American defendant. *Id*. at 824-27.

The instant case is not factually identical to *Bishop* or *Fike*. Unlike *Fike*, the juror did not orally express his concerns, but unlike *Bishop*, the prosecutor pointed to the juror's personal conduct which the prosecutor interpreted to mean that the juror was skeptical of the judicial system. Appellants have not shown that distrust of the judicial system is a surrogate for racial bias. As the Government notes, the appellants' interpretation of the prosecutor's explanation is not what the district court understood her to mean. The district court understood her to express concern about Juror No. 7's belief in the prosecution's fairness to the defendants. The district court did not find the explanation vague or unclear. A juror's trust in the fairness of the system is not inherently based upon race. As in *Fike*, the juror's action "removes the specter of generic reason or group based presumption." *Fike*, 82 F.3d at 1320. The prosecutor articulated specific conduct which conveyed such an attitude. Under the "great deference"

6

standard of review, we affirm the district court's assessment of the prosecutor's articulated reason.

Perkins argues that the district court failed to make specific findings when it "enhanced" Perkins' sentence by two levels for his role in the offense. Perkins argues that his conduct, managing assets of the organization, did not "warrant an upward departure" under application note 2 of U.S.S.G. § 3B1.1. Perkins argues that the Government failed to prove that he "exercised management responsibility" over the assets as required under note 2.

Section 3B1.1(c) provides for a two-level increase in the offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" that involved fewer than five participants and was not otherwise extensive. An application note to § 3B1.1 provides that

> [t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nonetheless exercised management responsibility over the property, assets, or activities of a criminal organization.

§ 3B1.1, comment. (n.2) (emphasis added).

The Government objected to Perkins' presentence report (PSR) because Perkins had not received "an adjustment" for his role in the offense. The Government argued that Perkins controlled the assets of the conspiracy in that he received the payments for the

7

stolen goods and either cashed the checks or deposited the funds in one of his own accounts. The Government further argued that Perkins "exercised management responsibility by negotiating the transactions that led to the sale of the stolen goods to Wade Investments." The Government concluded that an "upward departure" was warranted.

The probation officer responded that the Government's argument "for a role adjustment" was based on the rationale for an upward departure. When asked to clarify its position, the Government advised the probation officer that Perkins' involvement in the offense warranted a role adjustment pursuant to § 3B1.1(c). The probation officer recomputed the guidelines by increasing Perkins' offense level by two levels under § 3B1.1(c) based on his role in the offense as cited by the Government. The district court adopted the factual findings and guidelines application in the PSR.

Perkins did not object to the enhancement and, thus, presents this challenge for the first time on appeal. Parties are required to challenge errors in the district court. When a defendant in a criminal case has forfeited an error by failing to object, this court may remedy the error only in the most exceptional case. *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994) (en banc), *cert. denied*, 115 S. Ct. 1266 (1995).

Under FED. R. CRIM. P. 52(b), this court may correct forfeited errors only when the appellant shows: (1) there is an error, (2)

that is clear or obvious, and (3) that affects his substantial rights. *Id.*, 37 F.3d at 162-64. If these factors are established, the decision to correct the forfeited error is within the sound discretion of the court, and the court will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 735-36 (1993).

A two-level upward adjustment under § 3B1.1(c) is proper only if Perkins was "the organizer or leader of at least one other participant in the crime and [if] he assert[ed] control or influence over at least that one participant." *See United States v. Jobe*, 101 F.3d 1046, 1065 (5th Cir. 1996). An upward departure, however, may be warranted if the defendant exercised management responsibility over the property, assets, or activities of a criminal organization." § 3B1.1(c), comment. (n.2).

Perkins did not exercise such control over another person, but the facts show that he managed the accounts. Consequently, the district court erred in enhancing Perkins' sentence under § 3B1.1(c), but it could have validly departed upward based upon his management of the organization's assets.

Regardless, there is "little functional difference" between an enhancement and an upward departure. *United States v. Knight*, 76 F.3d 86, 88 (5th Cir. 1996). The difference derives from "notice considerations." *Id*. Perkins had notice that the increase would

9

be considered.  Therefore, we conclude that he has not shown an error that implicates the integrity of the judicial process.

CONCLUSION

Based on the foregoing, we AFFIRM Perkins' and Smith's convictions and sentences.

AFFIRMED.