# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60352

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2014

Lyle W. Cayce
Clerk

CHARLENE CREAR

Plaintiff – Appellant

v.

GREGORY HORN, Medical Doctor, doing business as Gregory W. Horn, doing business as Mississippi Coast OB/GYN, P.A., doing business as St. Martin's Woman's Clinic, P.A.,

Defendant – Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:12-CV-8

Before STEWART, Chief Judge, and WIENER and COSTA, Circuit Judges.

PER CURIAM:*

In this Mississippi medical malpractice case, Plaintiff–Appellant Charlene Crear appeals the district court's denials of her motion for new trial and *Edmonson* challenge to jury selection.

**I.**

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60352

Charlene Crear began suffering from intense pelvic pain in 2008. She went to Dr. Gregory Horn for treatment until she moved to Jacksonville, Florida shortly thereafter. While in Jacksonville, Crear continued to have severe pelvic pain and she sought treatment from Dr. Christina Adams in March 2010. Dr. Adams attempted to treat Crear's pelvic pain symptoms first with birth control pills and later with an IUD, but both options failed. Crear continued to experience chronic pelvic pain so severe that she sought treatment on thirteen separate occasions—sometimes in emergency rooms— between when she began seeing Dr. Adams and when she returned to see Dr. Horn in Mississippi in October 2010.

Crear revisited Dr. Horn in hopes of finally finding a way to alleviate her pain. Dr. Horn examined Crear and recommended that the best treatment option was a hysterectomy with bilateral salpingo-oophorectomy, the technical term for removal of the uterus as well as both ovaries and fallopian tubes.

At her preoperative appointment, Crear read and signed a detailed consent form. The consent form's front page lists the five different types of hysterectomies including those with and without ovarian removal. This form also advised her of the nature, purpose, risks, and consequences of the proposed treatment as well as alternative treatments, including birth control pills, hormones, exercise, vaginal appliances, and other procedures. Crear and Dr. Horn both signed this form. Two days later, Crear underwent the surgery and there were no complications. Crear's medical records reveal that she had no further complaints about pelvic pain in the immediate aftermath of the operation and she did not seek further medical treatment until an October 2011 visit with another doctor for menopause treatment.

Crear then filed suit against Dr. Horn alleging that he had committed medical malpractice by unnecessarily performing a total hysterectomy and

No. 13-60352

failing to obtain her informed consent for the surgery. The case proceeded to trial, with the jury entering a verdict in favor of Dr. Horn.

Crear then filed a Rule 59 Motion for New Trial, claiming that the jury's verdict was contrary to the great weight of the evidence. Crear's motion argued that Dr. Horn had not obtained informed consent for the surgery because he did not notify her about the alternative of a partial hysterectomy leaving one or both ovaries. The trial court denied Crear's motion, explaining both that the consent form mentioned these other possibilities and that the testimony of Dr. Horn and his expert provided a basis on which the jury could conclude that the other possibilities were not as effective options for treating Crear's severe pelvic pain.

## II.

Crear challenges the district court's denial of her motion for new trial as well as its rejection of an *Edmonson* challenge.[1]

## A.

During *voir dire*, Dr. Horn's counsel used peremptory challenges to remove two African-American jurors. Crear's counsel raised an *Edmonson* challenge at the conclusion of *voir dire* and the court required Dr. Horn's counsel to provide race-neutral explanations for the strikes. Crear's counsel accepted without objection the reasons provided for striking one juror but objected to the reasons provided for striking the other, Mr. Charles Dorsey. When the court asked for a race-neutral explanation, Horn's counsel said the following:

> Mr. Dorsey indicated that he had had a back injury that he walked around with for nine months while his doctor did not read his records. That's the understanding I had. With some hostility

---

[1] The Supreme Court extended the reach of *Batson v. Kentucky*, 476 U.S. 79 (1986), to civil trials in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 618–28 (1991).

just in the inflection of what he had to say about that, he was not happy about the way he had been treated by his physician, Your Honor. Quite frankly, we're scared of folks that have a real serious problem with doctors, and he probably had the most vocal response on that issue.

Crear's counsel responded to this explanation by identifying a non-African-American juror who was not struck but "gave answers that one of his doctors accused him of malingering and [he] had to switch doctors." The trial court did not believe this juror's answer was sufficiently similar to Dorsey's to establish pretext and asked Crear's counsel whether he had any other response to Horn's explanation for striking Dorsey. Crear's counsel made no further objection, stating only, "No, Your Honor. Thank You."

We review for clear error the district court's determination that the nonmovant's attorney gave a valid race-neutral explanation for a peremptory strike. *United States v. Turner*, 674 F.3d 420, 436 (5th Cir. 2012). Because of jury selection's subjective nature, the district court's determination is likely to be based "largely on the court's evaluation of the credibility of counsel's explanation." *United States v. Perkins*, 105 F.3d 976, 978 (5th Cir. 1997) (citing *United States v. Wallace*, 32 F.3d 921, 925 (5th Cir. 1994)). Our review of the district court's denial of a *Batson/Edmonson* challenge is deferential because the trial court is better situated to determine the credibility of the attorney's explanation—being able to observe inflection, demeanor, and other intangibles that are central to that inquiry. *See Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) ("We have recognized that these determinations of credibility and demeanor lie 'peculiarly within a trial judge's province,' and we have stated that 'in the absence of exceptional circumstances, we would defer to [the trial court].'" (quoting *Hernandez v. New York*, 500 U.S. 352, 365–66 (1991)).

4

No. 13-60352

Under this standard, we find no error in the trial court's denial of Crear's *Edmonson* challenge based on Horn's race-neutral explanation that Dorsey "had the most vocal response" when questioned about his feelings towards doctors—a characterization Crear did not challenge in the district court.

**B.**

We now turn to Crear's claim that the district court erroneously denied her motion for new trial. This court reviews a trial court's denial of a motion for new trial for abuse of discretion. *Foradori v. Harris*, 523 F.3d 477, 497 (5th Cir. 2008); *see also Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297–98 (5th Cir. 1978) ("When, as in this case, a motion for a new trial has been made on the ground of insufficient evidence to support the verdict and the like, the failure by the losing party to move for a directed verdict . . . still operates to foreclose consideration of the question of sufficiency on appeal, and the appellate court may inquire only whether the trial court abused its discretion in overruling the motion for a new trial." (quoting *Little v. Bankers Life & Cas. Co.*, 426 F.2d 509, 511 (5th Cir. 1970))). "To show an abuse of discretion in this respect, the defendant must show an absolute absence of evidence to support the jury's verdict." *Foradori*, 523 F.3d at 477. Crear fails to surmount this especially deferential review posture. *See id.* at 497 ("Our review of the district court's denial of a motion for a new trial is more deferential than our review of a motion for judgment as a matter of law.").

Crear's argument is that there was no basis from which the jury could find informed consent because that consent exists under Mississippi law only if the patient is notified about "feasible treatment alternatives." *See Herrington v. Spell*, 692 So. 2d 93, 99–100 (Miss. 1997) (listing as "items requiring disclosure" the same six items included in the jury instructions in

5

this case, including the existence of feasible treatment alternatives), *overruled on other grounds by Whittington v. Mason*, 905 So. 2d 1261 (Miss. 2005).  According to Crear, the feasible alternative about which she was not informed relates to hysterectomies that do not include removal of the ovaries, which she contends would have kept open the option of in vitro fertilization and obviated her need for menopause-related hormone therapy.

As the district court noted when denying the motion for new trial, there were three evidentiary bases to support the jury's finding that Crear received ample notice. First, among other statements it contained about treatment options, the consent form stated:

> Along with removing your uterus, your ovaries and your fallopian tubes may or may not be removed.
>
> You should discuss this in detail with your physician.  Your ovaries are separate from your uterus.  The ovaries make hormones that are necessary for you.  If the ovaries are removed, most likely you will need to take hormones either by mouth, in the form of a patch, implant, or by injection.

Second, the defense expert opined that a hysterectomy without ovary removal was not as effective an option because it would have increased the risk of continued pelvic pain.  Finally, Dr. Horn testified to the same effect.  This is more than ample evidence to support the jury's finding that Crear was notified of any feasible treatment alternatives.

As this court reasoned in another case challenging a defense verdict in an informed consent case, "the trial court and the jury heard evidence on both sides.  The jury made its finding, and the trial court found that verdict to be not contrary to the great weight of the evidence.  We have no reason to hold that the trial court abused its discretion in denying the motion for new trial." *Smogor v. Enke*, 874 F.2d 295, 298 (5th Cir. 1989).  Likewise here, Crear has not shown an "absolute absence of evidence" in support of the jury's verdict.

No. 13-60352

## III.

For these reasons, the district court's judgment is AFFIRMED.