**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 92-7094
(Summary Calendar)

JAMES L. POLK and
MATTIE B. POLK,

                                        Plaintiffs-Appellants,

                    versus

DIXIE INSURANCE COMPANY,

                                        Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Mississippi

(August 4, 1992)

Before KING, DAVIS and WIENER, Circuit Judges.

PER CURIAM:

     In this Mississippi diversity case, the Plaintiffs-Appellants James L. and Mattie B. Polk, who are black, appeal the district court's overruling of their Batson[1] objection to the purported discriminatory exercise of peremptory jury challenges by Defendant-Appellee Dixie Insurance Company.  Concluding that the findings of

_____

     [1]   Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

the district court were not clearly erroneous, we affirm.

I

FACTS AND PROCEEDINGS

The Polks sued Dixie Insurance Company (Dixie) for insurance policy proceeds claimed for loss of their car and for bad faith denial of their claim. The district court granted summary judgment for Dixie on the Polks' bad faith denial claim. The policy claim was tried to a jury, which likewise found for Dixie.

During voir dire, Dixie exercised two of its three peremptory challenges to remove the only two black persons on the tendered panel, resulting in an all-white jury. The Polks moved the court to require Dixie's counsel to provide a non-racial reason for her exercise of these two challenges. Before Dixie responded, the court denied the motion on the grounds that Batson's prohibition of racial use of peremptory challenges did not extend to private parties. On appeal,[2] we affirmed on the basis of our en banc opinion in Edmonson v. Leesville Concrete Co., Inc.[3] The United States Supreme Court subsequently reversed our en banc opinion in Edmonson to hold that Batson did apply to civil suits between private parties.[4] In the Polks' case, the Court granted certiorari, vacated our judgment, and remanded the case for further

_____

[2] Polk v. Dixie Ins. Co., 897 F.2d 1346 (5th Cir. 1990). (Polk I)

[3] 895 F.2d 218 (5th Cir. 1990).

[4] ____ U.S. ____, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

2

consideration in light of Edmonson.[5]  On remand, we directed the district court to determine whether the Polks had made a prima facie case of racial discrimination and if so, to allow Dixie the opportunity to show nonracial reasons for its exercise of the peremptories.[6]

Pursuant to our instructions, the district court held a hearing.  After the court found that the Polks had made a prima facie case, Dixie's counsel stated that she could not remember why she had struck the two black jurors, noting that three to four years had elapsed since the 1988 trial of the case.  She asserted, however, that eyeball contact must have been the reason because "I can tell the Court for sure that the element of eyeball contact is the turning factor in every decision I make in every case I try." Eyeball contact, she elaborated on cross-examination by the Polks' counsel, "is not just looking at me; it is the expression on their face [sic] when they are looking at me, whether there is a smirk or smile or rolling their eyes; it is the impact of the eyeball contact, if any."

Relying on the trial notes of her assistant, Dixie's counsel proffered secondary reasons.  One black member of the venire was an unemployed housewife; Dixie's counsel stated that she generally dismissed unemployed persons and indeed had used her third peremptory in the Polks' case to strike an unemployed white

---

[5]    ____ U.S. ____, 111 S.Ct. 2791, 115 L.Ed.2d 965 (1991).

[6]    943 F.2d 553 (5th Cir. 1991).

3

housewife.  The other black stricken peremptorily by Dixie worked as an insurance company clerk; defense counsel averred that she always struck persons employed in her client's industry to prevent such person from unduly influencing the jury with their extrajudicial knowledge.

In rebuttal, the Polks presented one of the blacks who had been excluded from the jury, who testified, "I usually look at people when they are talking to me to make sure I can hear what they are saying."  At the conclusion of the hearing, the court found that the two black persons had been stricken for non-racial reasons.  This appeal followed.

II

ANALYSIS

At trial, proof of a Batson claim is a three-step process. First, the complaining party must make a prima facie showing that opposing counsel exercised a peremptory challenge on the basis of race.  If that party is successful, the burden shifts to the striking party to articulate a race-neutral explanation for the strike.  If the striking party articulates such a reason, the complaining party must show that the reason proffered is pretextual or otherwise inadequate; and the trial court then must determine whether the complaining party has shown the articulated rationale to be pretextual or has otherwise carried the ultimate burden of proving purposeful discrimination.[7]

_____

[7]     Hernandez v. New York, ____ U.S. ___, 111 S.Ct. 1859, 1865-66 (1991) (plurality), citing Batson, 476 U.S. at 96-98, 106 S.Ct. at 1722-24; Moore v. Keller Industries, Inc., 948 F.2d 199,

4

On appeal, we turn directly to the ultimate finding of discrimination _vel_ _non_ when the striking party has proffered a race-neutral explanation and the trial court has ruled.[8] We review that finding for clear error, according deference to the credibility evaluations which usually inhere.[9] So doing here, we conclude that the district court's finding of no discrimination was not clearly erroneous.

The Polks contend that the confluence of two circumstances precludes a finding that Dixie articulated a race-neutral explanation. One such circumstance is that Dixie's counsel admitted that she had no specific memory of the strikes in dispute. The other is that she offered a subjective explanation -- eye contact -- as the most likely reason for her strikes.

That a lawyer would forget why he or she had struck particular jurors years earlier is not surprising, especially when the then-controlling law required no reasons. Nonetheless, when an attorney offered virtually nothing beyond "I do not remember," the Third Circuit in _Harrison v. Ryan_[10] found that the striking party failed to carry its burden. That is not the situation here. Dixie's counsel maintains that she must have relied on eyeball contact

---

201-202 (5th Cir. 1991), _cert._ _denied_, ____ U.S. ____, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992); _United States v. Clemons_, 941 F.2d 321, 323 (5th Cir. 1991).

[8] _Hernandez_, 111 S.Ct. at 1866; _United States v. Forbes_, 816 F.2d 1006, 1010 (5th Cir. 1987).

[9] _Clemons_, 941 F.2d at 325.

[10] 909 F.2d 84, 87 (3rd Cir.), _cert._ _denied_, ___ U.S. ___, 111 S.Ct. 568, 112 L.Ed.2d 574 (1990).

because she always does and may have relied on other race-neutral factors in line with guidelines she generally follows.  Under similar circumstances, the Eighth Circuit has found the striking party's burden satisfied.[11]  We see no reason to take a contrary position in light of the time lapse between juror selection and the Batson hearing.  When the applicability of Batson is clear at trial and contemporaneous explanation is required, lapse of memory would trigger more serious concerns.

Nevertheless, the Polks argue that Dixie's reliance on an unverifiable subjective consideration such as eye contact casts further doubt on its justification.  We disagree. Jurisprudentially, it is too late in the day to contend that eye contact fails to satisfy the striking party's burden of articulating a neutral explanation. Recognizing that "the decision to exercise a peremptory challenge . . . is subjective"[12] and often "influenced by intuitive assumptions,"[13] we have explicitly accepted eye contact (or lack thereof) as a legitimate rationale.[14]  In the Batson context, subjective considerations might not be susceptible to objective rebuttal or verification.  We nonetheless permit them

---

[11]    See United States v. Nicholson, 885 F.2d 481 (8th Cir. 1989); United States v. Wilson, 867 F.2d 486 (8th Cir.), cert. denied, 493 U.S. 827, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989).

[12]    Thomas v. Moore, 866 F.2d 803, 805 (5th Cir.), cert. denied, ___ U.S. ___, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989).

[13]    United States v. Lance, 853 F.2d 1177, 1181 (5th Cir. 1988).

[14]    Id.; United States v. Terrazas-Carrasco, 861 F.2d 93, 94–95, n. 1 (5th Cir. 1988); United States v. Cartlidge, 808 F.2d 1064, 1071 (5th Cir. 1987).

6

because of the inherent nature of peremptory challenges, with the understanding that ultimate Batson findings "largely will turn on evaluation of credibility"[15] of counsel's explanation.

The Polks attempt to distinguish our cases accepting eye contact as a neutral explanation by arguing that some black persons remained on the jury in those cases but all were dismissed here. We understand this as an argument that a subjective consideration like eye contact is inadequate to counter the heightened inference of discrimination arising when the striking party accepts no black jurors. We decline to establish such a per se rule. Whether the striking party was or was not motivated by its proffered explanation is a fact-intensive question which must be decided case by case in light of the totality of circumstances. We cannot say that eye contact necessarily is a phony reason when it is proffered as justification for removal of all black jurors. On the record in this case, the trial court's conclusion that Dixie's counsel was not motivated by racial consideration is a permissible view of the evidence.

Finally, the Polks point to an explanation for the strikes presented by Dixie in an earlier appeal and object to the expansion on that explanation introduced at the Batson hearing. United States v. Romero-Reyna[16] involved an analogous situation. At a Batson hearing conducted on remand, the prosecutor "essentially

---

[15]    Batson, 476 U.S. at 98, n. 21.

[16]    889 F.2d 559 (5th Cir. 1989), cert. denied, 494 U.S. 1084, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990).

7

repeated a fuller version of the explanation offered at the sidebar conference, which had immediately followed completion of jury selection, plus an additional reason for excluding the pipeline operator."[17]  There, we deferred to the trial court's assessment of whether the added reason was legitimate and credible.  Finding no inconsistency between Dixie's earlier and later explanations, we do the same here.

AFFIRMED.

---

[17]    889 F.2d at 562.