United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 15, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 06-60822

UNITED STATES OF AMERICA,

Plaintiff-Appellee

VERSUS

BYRON DANIEL,

Defendant-Appellant

Appeal from the United States District Court
For the Southern District of Mississippi
5:05-CR-19

Before DAVIS, DENNIS and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Bryon Daniel ("Daniel") appeals his conviction for the crime of escape in violation of 18 U.S.C. § 751(a). Daniel argues that the district court erred in (1) denying his motion for new trial based on improper comments made by the

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

prosecutor during closing argument; (2) denying his motion to dismiss for double jeopardy; and (3) denying his second motion for new trial or in the alternative request for interviews of jurors. For the following reasons, we AFFIRM.

I.

In April 2005, Daniel was serving a federal sentence in a minimum security facility at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC-Yazoo"). The Government alleged that Daniel escaped from this facility on April 16, 2005 by crossing the property line. Although Daniel admitted that leaving the prison camp building was a violation of prison policy, he denied he crossed the FCC-Yazoo property line. As a result of his violation of prison policy, Daniel was placed in solitary confinement for a period of about seven months, lost visiting and work privileges, and was ultimately transferred to a higher security facility.

In December 2005, an indictment was filed against Daniel for escape. Prior to trial, the Government filed a motion in limine, which sought to prohibit Daniel "from introducing into evidence, mentioning in voir dire or opening statement, or otherwise presenting before the jury any evidence pertaining to any administrative disciplinary action or punishment received by the defendant, or that he was subject to, as a result of his actions resulting in the instant charges." The motion was granted by the district court. Daniel was subsequently found guilty of escape and

2

was sentenced to ten months of imprisonment, three years of supervised release, and ordered to pay a $100 special assessment. Daniel timely appealed.

## II.

As his first assignment of error, Daniel argues that the following portion of the prosecutor's closing argument was improper:

| | |
|---|---|
| [The Prosecutor]: | The only thing that keeps inmates in a camp facility that has no fence, the only thing that keeps those inmates up there at Yazoo City FCI at the camp, is the knowledge that if they cross that line and leave the prison grounds, they're going to be caught and punished. And if you take away that punishment – |
| [Defense Counsel]: | Objection. Your Honor, he's talking about punishment here. |
| [The Court]: | Well, that deterrent. |
| [The Prosecutor]: | I used the wrong word. I should have used the word "deterrent." |
| [The Court]: | Substitute the word - objection sustained. Substitute the word "deterrent" on that. |
| [The Prosecutor]: | I apologize. I didn't mean to mislead anybody.<br>The point I'm trying to make is it's important. When inmates at a camp can freely go across and leave that campground and nothing happens, there is no deterrent to keep the next guy from going and maybe even going further. |

Daniel claims that this argument was improper for two reasons: (1) it urged the jury to consider "deterrence" as a factor in its deliberations; and (2) it permitted the government to argue deterrence when the defense was prohibited by the ruling on the

3

motion in limine from presenting any testimony that Daniel suffered administrative punishment for his act.  Since defense counsel did not contemporaneously object to the prosecutor's use of the word "deterrent" in his argument, we must review Appellant's claim based upon plain error.[2]

This court has set forth a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks must in fact have been improper; and (2) the remarks must have prejudicially affected the substantive rights of the defendant.[3]  In determining whether the prosecutor's comments prejudiced the defendant's substantive rights, consideration is given to "(1) the magnitude of the statement's prejudice; (2) the effect of any cautionary instructions given; and (3) the strength of the evidence of the defendant's guilt."[4]  "The magnitude of the prejudicial effect is tested by looking at the prosecutor's remarks in the context of the trial in which they were made and attempting to elucidate their intended effect."[5]  The district court's on-the-scene assessment of the prejudicial effect, if any, carries considerable weight.[6]

---

[2]United States v. Gallardo-Trapero, 185 F.3d 307, 321 (5th Cir. 1999).

[3]United States v. Fields, 72 F.3d 1200, 1207 (5th Cir. 1996).

[4]Gallardo-Trapero, 185 F.3d at 320 (internal citation and quotations omitted).

[5]Fields, 72 F.3d at 1207.

[6]Id.

Daniel concedes that there is no Fifth Circuit case directly addressing the issue of whether "deterrence" is a proper element for the jury to consider in a criminal trial, and the cases relied upon by Daniel as persuasive authority are distinguishable from the instant circumstances.[7] Contrary to Daniel's argument, our case law indicates that "appeals to the jury to act as the conscience of the community are permissible, so long as they are not intended to inflame."[8]

In this case, we conclude that it was not improper for the prosecutor to urge the jury to consider deterrence in his closing argument.[9] During trial, Daniel testified, inter alia, that "being out of bounds or going to pick up some food is not like a real bad thing." We agree with the district court that the prosecutor's

---

[7]Unlike the cases cited by the defendant, the prosecutor's closing argument using the word "deterrent" did not appeal to an emotionally-charged, wide-scale, social problem such as the war on drugs. See United States v. Johnson, 968 F.2d 768, 772 (8th Cir. 1992); United States v. Solivan, 937 F.2d 1146, 1153 (6th Cir. 1991); United States v. Lee, 743 F.2d 1240, 1253 (8th Cir. 1984). There is no evidence in the record indicating that inmate escapes are a frequent and recurring problem, and the prosecutor's closing arguments did not imply that such was the case.

[8]Fields, 72 F.3d at 1208 (emphasis added).

[9]We have upheld as proper the following prosecutor's argument: "You are the arbiters of truth. You are the ones who stand between citizens of this country and an injustice, crimes that were committed against the nation in which we live." United States v. Ruiz, 987 F.2d 243, 248 (5th Cir. 1993). Similarly, we upheld the following argument as proper: "It's a neighborhood problem. If we take neighborhoods back by putting these people in jail, we can eventually work our way to solving this problem. But it's got to start right here." Fields, 72 F.3d at 1207.

closing remarks sought to encourage the jury to perform its duty to convict on the evidence in spite of the fact that Daniel's infraction seemed minor. On the whole, the prosecutor's comments regarding the need to deter similar conduct in the future by the defendant and the general inmate population were not inflammatory, and therefore, were not improper.[10]

It is a closer call whether in the context of this case it was plain error for the court to allow the prosecutor to argue there was nothing to deter Daniel or other inmates from escaping from a camp other than a fear of criminal punishment, and at the same time prevent the defense from informing the jury of the administrative punishment that Daniel suffered. However, even if the district court did err in allowing the prosecutor to argue deterrence after granting the government's motion in limine, we conclude that the remarks did not operate to the substantial prejudice of Daniel, and thus, do not warrant reversal.

## III.

As a result of Daniel's escape, the Bureau of Prisons (the "Bureau") placed him in solitary confinement for a period of about seven months, and ultimately transferred him to a higher security facility, which resulted in a loss of visiting, recreational and work privileges he enjoyed in the minimum security facility.

---

[10]See Ruiz, 987 F.2d at 249 ("The prosecutor's statements were merely a plea to the jury to do its duty – the record reveals no evidence of an intent to inflame.").

6

Daniel moved to dismiss the indictment against him on the ground that his administrative punishment constituted "punishment", and that the instant prosecution therefore violated the Double Jeopardy Clause. We review the double jeopardy claim *de novo*, although the district court's factual findings are accepted unless clearly erroneous.[11]

We conclude that Daniel's argument lacks merit. We, as well as other courts, have held, pre- and post-Hudson v. United States,[12] that disciplinary sanctions imposed by prison authorities for infractions of prison regulations do not bar a subsequent criminal prosecution.[13] We see no reason to depart from this general rule in this case. We therefore affirm the district court's denial of Daniel's motion to dismiss the indictment.

IV.

---

[11]Fields, 72 F.3d at 1209.

[12]522 U.S. 93 (1997). In Hudson, the Supreme Court held that the Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense." Id. at 99 (emphasis in original).

[13]See, e.g., Porter v. Coughlin, 421 F.3d 141 (2d Cir. 2005); Welch v. Epps, 103 F. App'x 828 (5th Cir. 2004); United States v. Shepard, 78 F. App'x 387 (5th Cir. 2003); Singleton v. Page, 202 F.3d 274 (7th Cir. 1999); United States v. Mayes, 158 F.3d 1215 (11th Cir. 1998); United States v. Galan, 82 F.3d 639 (5th Cir. 1996); United States v. Hernandez-Fundora, 58 F.3d 802 (2d Cir. 1995); United States v. Brown, 59 F.3d 102 (9th Cir. 1995); Garrity v. Fiedler, 41 F.3d 1150 (7th Cir. 1994); United States v. Newby, 11 F.3d 1143 (3d Cir. 1993); United States v. Rising, 867 F.2d 1255 (10th Cir. 1989); United States v. Williamson, 469 F.2d 88 (5th Cir. 1972); Gilchrist v. United States, 427 F.2d 1132 (5th Cir. 1970); Keaveny v. United States, 405 F.2d 821 (5th Cir. 1969).

After Daniel was convicted, but before his sentencing, the district court received a letter from a juror claiming, <u>inter</u> <u>alia</u>, that a juror had commented during deliberations that he made deliveries to FCC-Yazoo and stated that "people come and go" all the time. As a result, Daniel filed a second motion for new trial or, in the alternative, for interview of jurors, arguing that the jury improperly considered extraneous prejudicial evidence in reaching its verdict. Without holding a hearing, the district court denied the motion. The district court found that, although the jury was exposed to extraneous evidence, it was highly unlikely that Daniel was prejudiced by this statement. We review the district court's denial for an abuse of discretion.[14]

Assuming that the alleged statement made by the juror is properly characterized as "extraneous prejudicial information" under Federal Rule of Evidence 606(b),[15] we agree with the district

---

[14]<u>United States v. Straach</u>, 987 F.2d 232, 242 (5th Cir. 1993).

[15]Federal Rule of Evidence 606(b) provides in pertinent part:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But, a <u>juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention</u> . . . .

Fed. R. Evid. 606(b) (emphasis added).

court that Daniel was not prejudiced by this statement. During trial, Daniel stated that the rules restricting movement around the camp were very lax and often went unenforced, even testifying that persons would enter from outside the camp to play basketball with the prisoners. As a result, the statement allegedly made by the juror concerning the freedom with which people came and went at the camp served only to confirm Daniel's own testimony. In fact, in his motion, Daniel admitted that the juror's statement "could be taken as favorable to the defense theory." Accordingly, we find that the district court did not abuse its discretion in denying Daniel's motion for new trial.[16]

## V.

For the foregoing reasons, we AFFIRM.

---

[16]We also conclude that the district court did not abuse its discretion in failing to hold a hearing to assess whether the jury was adversely influenced by the subject statement. See United States v. Weber, 750 F.2d 307, 338 (5th Cir. 1984). In general, the manner of handling jury misconduct is left to the sound discretion of the trial judge. See id.